UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL D. FLEMING,

                    Petitioner,                              Case No. 1:21-cv-587

v.                                                           Hon. Hala Y. Jarbou

MATT MACAULEY,

                    Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Michael D. Fleming is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC I), MCL 750.520b. On April 3, 2019, the trial court sentenced Petitioner to 18 to 40 years' imprisonment.

On July 7, 2021, Petitioner filed his habeas corpus petition raising six grounds for relief, as follows:

I.      There was insufficient evidence to find beyond a reasonable doubt that Mr. Fleming was guilty of criminal sexual conduct.

II.     Mr. Fleming was denied due process of law under federal and state constitutions where the prosecutor failed to deliver complete discovery to the defense resulting in the defense attorney unwittingly eliciting possibly inculpatory evidence from a prosecution witness concerning the ownership of a vehicle investigated by the police.

III.    The trial court erred by not granting Mr. Fleming's motion to dismiss due to a 17-year delay in bringing charges against him.

IV.     Defendant was denied his right to due process and a fair trial where the substantial delay in charging him prejudiced his defense.

V.      Defendant is entitled to resentencing based upon several guidelines scoring errors, where correction of the errors would place Defendant in a different guideline sentencing range; the trial court abused its discretion in making factual determinations; and, defense counsel was ineffective for failing to object or present a meaningful argument as to the scoring errors.

VI.     Defendant was denied the effective assistance of counsel at sentencing where counsel failed to request downward departure based upon Defendant's "diminished mental capacity."

(ECF No. 1, PageID.2–3, 6, 11, 14, 17, 20, 23.) Respondent has filed an answer to the petition stating that the grounds should be denied because they have been procedurally defaulted, waived, are meritless, or are not cognizable on habeas review. (Resp. to Pet., ECF No. 17). Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court agrees that Petitioner has failed to state a meritorious federal claim and will, therefore, deny Petitioner's petition for writ of habeas corpus.

## Discussion

### I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

On May 9, 2001, the victim, CM, went to a hair salon to have her hair braided for her upcoming high school prom. Afterward, CM boarded a bus and headed home. When she exited the bus about two blocks from her house, it was dark. A man in a black Jeep Cherokee SUV, later identified as defendant through DNA testing, approached CM and asked her for directions. After she gave defendant directions, he drove away; however, he soon returned in his vehicle. He then stepped out of his SUV, advanced toward CM, and said something about someone nearby having killed a member of his family. Defendant next hit CM on the forehead with a gun and told her to get in the SUV. He also threatened to kill CM, and she entered his vehicle as demanded. He struck her in the head again, drove off, and parked behind an apartment building. Defendant warned CM not to scream or he would kill her. He began hitting her again with the gun and told her to get in the backseat of the

2

SUV. Defendant then ordered CM to take off her clothes. She complied because she was afraid that defendant was going to kill her. Defendant removed his pants, climbed into the backseat, got on top of CM, and engaged in penile-vaginal penetration. When he stopped, defendant threw CM's clothes at her, told her to get dressed, and began striking her again with his gun. Defendant then physically shoved CM out of the vehicle. Defendant warned CM not to tell anyone or else he would find her and kill her. Defendant proceeded to drive away.

CM crawled to a nearby house for help. She was able to call her mother and the police. CM was found bleeding from her head and appeared to be in a daze. CM's mother accompanied her to the hospital. Dr. Harold Derstine and the staff at Sinai Grace Hospital performed a sexual assault examination of CM. Dr. Derstine took swabs of CM's vagina for potential DNA evidence, and he then placed the swabs in a sealed rape kit. Dr. Derstine also treated a deep laceration on CM's forehead, which required stitches. CM was prescribed various medications and was discharged.

The rape kit was sent to the Detroit Police Department (DPD), which received it on August 20, 2001. Thereafter, the kit was placed in private storage where, unfortunately, it sat from 2001 until December 2013. Once the rape kit was discovered, it was sent to a private laboratory, Sorenson Forensics, for testing. Derek Cutler was employed as a forensic DNA analyst at Sorenson Forensics. He was admitted as an expert witness in the field of forensic DNA analysis. Cutler's involvement in this case was primarily "on the back end," meaning that he did not perform the actual analysis but rather was responsible for "interpretation of [the] result, forming conclusions, and report writing." He testified that the swabs taken from CM revealed the presence of male DNA. The laboratory test indicated that the male DNA included sperm cells. Cutler was able to interpret the data and develop a unique DNA profile for the then-unknown male DNA. But he did not have any DNA comparison sample at the time. Sorenson Forensics then sent the rape kit and the analysis report to the DPD. The report was also sent to the Michigan State Police, where Amber Young, a forensic scientist, entered the DNA profile from Sorenson Forensics into the Combined DNA Index System (CODIS). Joshua Strong, a CODIS scientist for the Michigan State Police, testified that the DNA profile matched the DNA profile belonging to defendant, whose DNA profile was already in CODIS. Strong issued a report and sent it to the DPD, informing the department of the match and the need to obtain a sample from defendant to compare and confirm the match.

Detective Jamie Pouliot, a cold case detective assigned to a sexual assault task force within the Wayne County Sheriff's Department, worked on the case in 2018. He obtained a search warrant for a buccal swab from defendant to be used to compare and confirm the DNA match from CODIS. Detective Pouliot also met twice with CM, including once as part of a Sexual Assault Forensic Examiner's (SAFE) interview. At the SAFE interview, Detective Pouliot showed CM a photographic

lineup and asked her if she recognized any of the individuals. Defendant's photograph was included in the lineup. CM, however, did not recognize him as her assailant. Detective Pouliot also searched for relevant vehicles registered in defendant's name, but he found none registered to defendant or his immediate family. Detective Pouliot was able to obtain an address with respect to defendant's residence in 2001. And he discovered that a "metallic silver" 2000 Jeep had been registered to a person at that address at the time of the sexual assault. On cross-examination, and much to the surprise and chagrin of defense counsel, Detective Pouliot, while confirming that the Jeep had not been registered in defendant's name, explained that it had been registered in the name of one of defendant's cousins with whom defendant was living in 2001.

Jessica Drager, a forensic scientist with the Michigan State Police crime laboratory, was admitted as an expert witness in the field of forensic science. She had worked on CM's case. Drager compared the DNA profile developed by Sorenson Forensics to the reference sample recently acquired from defendant pursuant to the search warrant. She testified that defendant's DNA reference sample matched the DNA profile developed by Sorenson Forensics. Drager stated that the odds of the DNA from defendant's reference sample matching the DNA profile developed by Sorenson Forensics and being from someone other than defendant were between "one in one hundred and forty-two point nine quintillion" and "one in seven hundred and forty-eight point five quintillion," adjusting for different races. Drager testified that the best estimate at the time was that there were only about seven billion people on Earth. She would expect, therefore, that only one person on Earth had that specific DNA profile—defendant.

(Mich. Ct. App. Op., ECF No. 18-11, PageID.1037–39.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

The jury heard testimony over the course of three days from several individuals, including the victim, the victim's mother, several police officers, the physician who performed victim's sexual assault examination, a DNA analyst, and three forensic scientists. (Mar. 13, 2019 Trial Tr. ECF No. 18-7; Mar. 14, 2019 Trial Tr., ECF No. 18-8.) Petitioner chose not to testify. (ECF No. 18-8, PageID.925–26.) The jury deliberated for no more than thirty-five minutes before reaching a unanimous verdict of guilty. (ECF No. 18-8, PageID.986.)

Reviewing the statutory sentencing guidelines, the court sentenced Petitioner to 18 to 40 years in prison on April 3, 2019. (Apr. 3, 2019 Sentencing Tr., ECF No. 18-10.) The court and the parties reviewed Petitioner's pre-sentence investigation report with no objections to its content but noted "some issues with regard to the sentencing . . . guidelines." (*Id.*, PageID.1002.) Considering first Offense Variable 4, defense counsel agreed that "under the circumstances, [the victim] could have psychological [injury]."[1] (*Id.*, PageID.1005.) As to Offense Variable 7, over the objection of defense counsel, the court found that, based on the record, "there was excessive brutality associated with . . . the crime at issue." (*Id.*, PageID.1007.) The court relied upon the testimony that Petitioner struck the victim in the head numerous times with the butt of a gun, causing a laceration and requiring stitches, and that, following the sexual assault, Petitioner pushed the victim out of the vehicle into the parking lot, again injuring the victim. (*Id.*, PageID.1007–08.) This required a score of 50 points. (*Id.*) Again over the objection of defense counsel, the court further found that that the record supported a finding by the preponderance of the evidence that the Petitioner had engaged in predatory conduct for purposes of Offense Variable 10 when Petitioner engaged with the victim while he was in the car, pulled a weapon on her, stopped her from walking, and possessed a gun in advance of the assault, which was used to threaten and force the victim into the car. (*Id.*, PageID.1009–11.) These findings resulted in a score of 15 points for Offense Variable 7. (*Id.*, PageID.1011.) Finally, in connection with Offense Variable 12 regarding contemporaneous criminal acts, the court rejected defense counsel's objection and determined that the record supported a finding by a preponderance of the evidence of felonious assault and kidnapping, resulting in a score of 10 points. (*Id.*, PageID.1014.) These findings, combined with the undisputed

---

[1] Offense Variable 4 refers to "psychological injury to a victim." MCL 777.34(1).

sentencing variables, resulted in a total Offense Variable score of 130, a "six". (*Id.*, PageID.1022–23.)

While defense counsel requested that the court consider Petitioner's "mental health issues" in sentencing, the court found the argument uncompelling, (*Id.*, PageID.1029.) The court explained:

> [I]t is clear . . . that . . . your conduct . . . was brutal, and that it shattered . . . the . . . life of a nineteen year old girl, at that time.
>
> This was a sexual assault that was exceedingly brutal.
>
> . . . you beat her up with a gun.
>
> . . . you sexually assaulted her.
>
> And then you just threw her on the side of the parking lot, which necessitated . . . her escape, only by crawling . . . to a neighboring house.
>
> \*       \*       \*
>
> I am aware of the documented mental health history, that you have had to deal with.
>
> But the fact remains, you perpetrated a very violent crime on a nineteen year old child. Young lady. A high school student.
>
> And when I consider all these circumstances, I'm left to the inevitable conclusion that your conduct must be dealt with, proportionately.

(*Id.*, PageID.1031–32.)

Petitioner directly appealed his conviction and sentence. By way of a brief filed with the assistance of counsel and a *pro per* supplemental brief, Petitioner raised the same six issues he raises in his habeas petition. (ECF No. 1; *see* ECF No. 18-11). In an opinion issued July 23, 2020, the court of appeals denied relief. (ECF No. 18-11.)

Petitioner reports that he did not receive the appellate court's opinion, or any notice that his appeal had been decided, until counsel forwarded the opinion more than one month later. (Pet.

Aff., ECF No. 3-1, PageID.66; Tomak Correspondence, ECF No. 3-2.) Moreover, on August 28, 2020, just prior to Petitioner receiving the appellate court's opinion, the facility where Petitioner was housed was placed on lockdown status due to the COVID-19 pandemic (Grievance Resp., ECF No. 3-3, PageID.73.), and the law library was closed (ECF No. 3-2, PageID.66). As a result, Petitioner was unable to access the law library or a prison legal writer.

Prior to the expiration of the deadline to file an application for leave to appeal, Petitioner wrote to the Michigan Supreme Court to inform the court that he was unable to access his prison legal writer due to an outbreak of COVID-19 and would therefore be unable to timely file his application for leave to appeal. (Mich. Sup. Ct. Correspondence, ECF No. 3-5, PageID.79.) In its response, the Michigan Supreme noted that "filing deadlines were tolled for about three months due to Covid-19 [under] the Governor's 'Stay Home' orders, the tolling period ended on June 8, 2020. There is no provision for additional tolling." (*Id.*, PageID.80.). Despite multiple attempts, the state supreme court denied Petitioner relief. (*Id.*, PageID.80; ECF No. 3-6, PageID.81–83; ECF No. 3-7, PageID.84–90.)

Petitioner filed a request to reissue the court of appeals' opinion so that his time for filing an application for leave to appeal could run anew. (*See* July 16, 2021 Mich. Ct. of App. Correspondence, ECF No. 10-1.) To protect his rights to habeas relief, Petitioner also filed the instant petition on July 7, 2021, requesting that this proceeding be stayed and held in abeyance while Petitioner continued to seek relief in the state courts. The Court granted that relief. (ECF No. 7.)

In a letter dated July 16, 2021, the Michigan Court of Appeals refused to reissue its opinion. (ECF No. 10-1, PageID.125.) Thereafter, in accordance with this Court order (ECF No. 7),

Petitioner filed a motion to reopen his petition (ECF No. 10, PageID.118). Petitioner has acknowledged that the Michigan Court Rules provide for a post-direct-appeal motion for relief from judgment but that such a motion may not be granted on an issue that has been decided on direct appeal against the movant. As all of Petitioner's issues were decided against him by the Michigan Court of Appeals, Petitioner posits that relief is not available by way of a motion for relief from judgment. (*Id.*, PageID.121.)

On August 30, 2021, the Court directed the Clerk to reopen this case (ECF No. 11) and ordered that Respondent file an answer or other pleading in response to the instant petition (ECF No. 12). Respondent did so on February 25, 2022. (ECF No. 17.) And on May 12, 2022, Petitioner filed a reply. (ECF No. 25.) The petition is now ripe for the Court's consideration.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This

8

standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise

9

contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

10

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

### A.      Exhaustion and Procedural Default

Before a court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present[ ]" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Fair presentation has a substantive component and a procedural component. Regarding substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at 277–78; *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). As to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

11

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner acknowledges that he has not exhausted any of his habeas issues in the state courts because he failed to fairly present them to the Michigan Supreme Court.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. Therefore, the Court concludes that he has at least one available state remedy.

Petitioner suggests that the remedies remaining in the state courts are not really "available." Although he does not speak directly to the remedy provided under Michigan Court Rule 6.500 *et seq.*, his chances of success are certainly slim. Under Rule 6.508, the state court "may not grant relief to the defendant if the motion . . . alleges grounds for relief which were decided against the defendant in a prior appeal . . . ." Mich. Ct. R. 6.508(D). All of the issues Petitioner hopes to exhaust were decided against him by the Michigan Court of Appeals.

But the fact that Petitioner's motion will likely be denied does not necessarily make it ***procedurally*** unavailable. The Sixth Circuit has identified certain circumstances where Michigan's post-judgment remedy would be procedurally unavailable:

> Daniels had no available means to exhaust the claims in the state courts because the six-month time limit for appealing the denial of a motion for relief from judgment had expired in June 2015. *See* Mich. Ct. R. 6.509, 7.205(G)(3). He also could not return to the state courts and raise these claims in a second or successive motion for relief from judgment because Michigan Court Rules allow for "one and only one

motion for relief from judgment . . . with regard to a conviction." Mich. Ct. R. 6.502(G)(1).

*Daniels v. Kawalski*, No. 19-1891, 2020 WL 628476, at *4 (6th Cir. Jan. 7, 2020). The Sixth Circuit has never stated that application of the limits on relief stated in 6.508(D) render the post-judgment remedy unavailable.[2] To the contrary, the Sixth Circuit has stated that it is up to the state courts, not the federal habeas court, to determine whether Petitioner is eligible for relief under those provisions:

> In this case, however, there appears to be a state procedure that Petitioner can still pursue to obtain relief. Specifically, Petitioner is entitled to return to the county circuit court and file a post-conviction, post-direct-appeal motion for relief from his judgment of conviction. M.C.R. 6.502. Since Petitioner has not yet filed such a motion, and since there is no statutory time limit for such a filing, he could still do so now. Under the pertinent Michigan Court Rules, the county court may not entertain such a motion if it finds that the unexhausted claims could have been raised on direct appeal, unless Petitioner can show "good cause" for not raising them and actual prejudice. M.C.R. 6.508. But there is no reason to believe that

---

[2] The rule provides:

> The court may not grant relief to the defendant if the motion
>
> > (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
> >
> > (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision; for purposes of this provision, . . .;
> >
> > (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
> >
> > > (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> > >
> > > (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D).

Petitioner would be unable to make such a showing, and, in any event, ***such a determination is for the state court to make***.

*Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009) (emphasis added) (footnote omitted); *see also Hickey v. Hoffner*, 701 F. App'x 422, 425–26 (6th Cir. 2017) ("[T]he state trial court may not entertain such a motion . . . unless he can show 'good cause' for not raising them and 'actual prejudice.' MCR 6.508(D)(3). . . . ***In any event, that is a decision for the state court***." (emphasis added) (footnote omitted) (citations omitted)); *Godbolt v. Russell*, 82 F. App'x 447, 450 (6th Cir. 2003) ("No matter how unlikely it seems that Godbolt's petition will fall within the narrow exception contained in the statute, it is for the state courts to interpret and enforce their laws on such issues."). *But see Gadomski v. Renico*, 258 F. App'x 781, 784 (6th Cir. 2007) (concluding that because the petitioners could not likely satisfy the cause and prejudice requirement of 6.508(D)(3), they had no available remedy in state court).

The Sixth Circuit has not ruled specifically on the availability of Michigan's post-judgment remedy under 6.508(D)(2) under the circumstances presented here, where Petitioner raised all of his habeas issues on direct appeal in the court of appeals but failed to timely file an application for leave to appeal in the supreme court. In that same circumstance, however, this Court has previously concluded that the post-judgment remedy is not available:

> The only avenue that remains for Petitioner to raise his habeas grounds in the state court is a motion for relief from judgment under Michigan Court Rules 6.500 *et seq.* That procedure, however, does not permit relief where the motion "alleges grounds for relief which were decided against the defendant in a prior appeal...." Mich. Ct. R. 6.508(D)(2).[5] Therefore, the Court concludes that Petitioner has no available state remedy remaining.

---

[5] There are exceptions to the "decided on prior appeal" rule: if a retroactive change in law undermines the prior decision or if there is new evidence that would make a different result probable on retrial, or when a new claim for relief creates a significant possibility of actual innocence. Mich. Ct. R. 6.508(D)(2). None of those exceptions is applicable here. Petitioner does not rely on any retroactive changes in

> the law or new evidence; and he does not claim he is actually innocent—he just
> wants a shorter sentence.

*Oom v. Christiansen*, No. 1:22-cv-83, 2022 WL 831489, at *4 (W.D. Mich. Mar. 21, 2022); *see

also Spice v. Davids*, No. 1:21-cv-180, 2021 WL 790772, at *9 (W.D. Mich. Mar. 2, 2021)

("Although Petitioner has not availed himself of the remedy of a motion for relief from judgment

under Mich. Ct. R. 6.500 *et seq*., that relief is not available for the transcript issue because

Petitioner has already raised it on appeal and it has been decided against him. Mich. Ct. R.

6.508(D)(2)."); *Benoit v. Bock*, 237 F.Supp.2d 804, 807 (E.D. Mich. 2003) ("The petitioner could

begin the appellate process anew by filing a motion for relief from judgment. See Mich. Ct. R.

6.502. However, the Michigan Court of Appeals has already ruled perfunctorily that the

petitioner's claim lacks merit, and he is not asserting a retroactive change in the law. Thus, the

petitioner is barred from pursuing an otherwise available state court remedy, Mich. Ct. R.

6.508(D)(2), and his claim must be deemed exhausted.")

If a post-judgment remedy is available, Petitioner's claims are unexhausted, and the Court

cannot grant relief. But the Court could still consider Petitioner's claims on the merits and deny

relief. 28 U.S.C. § 2254(a)(2) ("An application for a writ of habeas corpus may be denied on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts

of the State.").

If, on the other hand, the post-judgment remedy is not available, Petitioner's failure to

timely present his application for leave to appeal to the Michigan Supreme Court stands as a

procedural default that precludes granting relief unless Petitioner demonstrates either (1) cause and

prejudice—cause for his failure to comply with the state procedural rule (or fairly present the issue

in the state courts) and actual prejudice flowing from the violation of federal law alleged in his

claim—or (2) that a lack of federal habeas review of the claim will result in a fundamental

miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Hicks v. Staub*, 377 F.3d 538, 551–52 (6th Cir. 2004). The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536–37. Although Petitioner might proclaim his innocence, he has not supported such a claim with new reliable evidence. Thus, overcoming the procedural default bar would turn on whether Petitioner has demonstrated cause for his procedural default and prejudice as a result.

Resolving whether a procedural default bars relief because it involves an examination of prejudice, requires some examination of the merits of the constitutional claims raised. As a result, the procedural default issue may actually require resolution of more issues than the case on the merits. When that is true, the Court may assume, without deciding, that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003); *Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) ("[T]he procedural default raises more questions than the case on the merits. We will therefore assume without deciding that there was no procedural default by petitioner and decide the merits of the case."); *Watkins v. Lafler*, 517 F. App'x 488, 498 (6th Cir. 2013) ("[T]he district court specifically noted that it chose not to address these [procedural default] arguments and rather assumed that no procedural default existed because "the procedural default issue raises more questions than the case on the merits.'. . . Given the variety and complexity of the defaults involved . . . we do likewise.").

16

Petitioner's claims are either unexhausted or procedurally defaulted. In either circumstance, however, the Court is permitted to review the merits. That appears to be the prudent course here.

### B.    Ground I: Insufficiency of Evidence

Petitioner first argues that his conviction for CSC I was infirm because it was not based on sufficient evidence. Such a claim is subject to a highly deferential standard of review. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis added). The question is not whether the reviewing court deems the verdict correct. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Petitioner has not cleared that hurdle.

Petitioner first contends that the evidence was insufficient to support his conviction because the victim had failed to personally identify Petitioner as her assailant. (ECF No. 1, PageID.7.) The court of appeals disagreed.

Applying the functional equivalent of the *Jackson* standard, the court of appeals identified the elements of the charged crimes as established by state law and then considered the evidence introduced at trial to determine whether, viewed in a light most favorable to the prosecution, that evidence could support a determination of guilt beyond a reasonable doubt. In addressing Petitioner's argument that there was insufficient evidence to establish Petitioner's identity as the perpetrator and to show that an act of penetration occurred, the court of appeals recognized:

> CSC I does require proof of sexual penetration, MCL 750.520b(1), which is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required," MCL 750.520a(r).
>
> Although [CM] could not identify defendant as the rapist, CM's testimony provided sufficient evidence showing that penile-vaginal penetration had indeed occurred, and the DNA evidence was more than sufficient to establish that not only was there penetration, but that it was defendant who sexually penetrated CM.

(ECF No. 18-11, PageID.1039–40.)

*Jackson* holds that it is the province of the jury to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Thus, to succeed in his challenge, Petitioner must show that the identified inferences are irrational. He has not. Certainly, the inference identified by the court of appeals—that Petitioner penetrated the victim's genital opening—rationally flows from the underlying fact that Petitioner's DNA was found inside the victim's vagina. Accordingly, the court

18

of appeals reasonably concluded that a rational jury could have found Petitioner guilty beyond a reasonable doubt. Petitioner is not entitled to habeas relief on this sufficiency claim.

Petitioner includes within his sufficiency argument a claim that the prosecution's use of the DNA lab report to establish Petitioner's identify was unconstitutional, in violation of the Confrontation Clause under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). This claim likewise lacks merit.[3]

The court of appeals also considered and rejected Petitioner's claim regarding the use of the DNA report on the merits as follows:

> With respect to the DNA analysis or lab report, it was admitted into evidence during the testimony of Derek Cutler, who, as noted earlier, was a forensic DNA analyst at Sorenson Forensics. Cutler *authored and issued* the DNA lab report, and he was vigorously cross-examined. Accepting that the DNA lab report was testimonial in nature for purposes of the Confrontation Clause, we find there was no constitutional infringement: Cutler testified at trial and was cross-examined in regard to the report. *Melendez-Dias* involved the admission of certificates of analysis sworn to by state laboratory analysts *who did not testify at trial*. *Melendez-Dias*, 557 US at 308. The *Melendez-Dias* Court held:
>
>> In short, under our decision in *Crawford* the analysts' affidavits were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial. [*Id.* at 311 (quotation marks and citation omitted).]
>
> *Melendez-Dias* is thus easily distinguishable and has no bearing on the instant case.
>
> Although someone besides Cutler physically analyzed the DNA evidence, it was ultimately Cutler who interpreted the analysis and results, formed the scientific conclusions, and drafted the report. Consequently, it was proper to admit the DNA lab report into evidence through Cutler's foundational testimony, and defendant's

---

[3] Respondent notes that this claim is procedurally defaulted because of Petitioner's failure to object to admission of the report at trial. With this procedural default as well, addressing the Confrontation Clause claim on the merits provides the more direct path to resolving Petitioner's claim.

confrontation rights were fully protected because Cutler was available for cross-examination regarding his lab report.

(ECF No. 18-11, PageID.1040.)

This represents an accurate recitation of *Melendez-Dias* and its requirements as applied to the facts of this case. Moreover, in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), the Supreme Court clarified that, when presented with a forensic laboratory report, "[t]he accused's right is to be confronted with the analyst *who made the certification*, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *Id.* at 652 (emphasis added). Petitioner was afforded the right to fully cross-examine Mr. Cutler, the forensic DNA analyst who authored and issued the DNA lab report in question. The Court therefore finds the court of appeals' decision to be a reasonable application of clearly established federal law as it pertains to the Confrontation Clause. *See Williams*, 529 U.S. at 410–11 (noting that the habeas court must instead determine if the state court's application of clearly established federal law was "objectively unreasonable"). Petitioner is not entitled to habeas relief on this claim.

### C.      Ground II: Prosecutorial Misconduct – Discovery Violation

Petitioner next contends that his conviction should be overturned because the prosecutor failed to deliver complete discovery to the defense, resulting in defense counsel unwittingly eliciting testimony from Detective Pouliot that Petitioner's cousin, with whom Petitioner was residing in 2001, owned a metallic silver 2000 Jeep at the time of the crime. (ECF No. 1, PageID.11.) Petitioner argues that "[t]he failure of the prosecution to offer or disclose the information [about Petitioner's cousin's Jeep] in discovery is a clear violation of the rule established in *Brady v. Maryland*, 373 US 83 (1963), which severely prejudiced his defense." (ECF No. 1, PageID.12.)

Petitioner's characterization of the prosecutor's failure as a *Brady* violation is surprising in that it is directly contrary to argument he made to the Michigan Court of Appeals. In that court, Petitioner acknowledged that the prosecutor's failure to provide the "Jeep" information "was not a so-called 'Brady' type violation since the prosecution did not hold back exculpatory evidence . . . ." (Pet'r's Appeal Br., ECF No. 18-11, PageID.1074 (footnote omitted).) The court of appeals also noted that Petitioner was not raising a *Brady* claim. (Mich. Ct. App. Op., ECF No. 18-11, PageID.1041.) Thus, Petitioner never presented the *Brady* claim to **any** Michigan court.

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). As Petitioner noted on direct appeal, the evidence purportedly withheld was not exculpatory, it was inculpatory. Therefore, the prosecutor's failure to provide it cannot be a *Brady* violation.

Petitioner presented the issue to the court of appeals as a discovery violation, not a *Brady* violation. But whether Petitioner violated the Michigan discovery rules is entirely a state law issue, not a federal constitutional violation. The Supreme Court has consistently held that "[t]here is no general constitutional right to discovery in a criminal case[.]" *United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988) (quoting *Weatherford v. Bursey,* 429 U.S. 545, 559(1977)). "Rather, all the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial. *Id.* Thus, unless Petitioner demonstrates that he has been deprived of

exculpatory evidence under *Brady*, his discovery claims are not cognizable in this proceeding. *See Weatherford,* 429 U.S. at 559.

The court of appeals concluded that even if the prosecutor did violate the discovery rule, it was not willful and it was not prejudicial. (Mich. Ct. App. Op., ECF No. 18-11, PageID.1041–1042.) The court's determination that Petitioner was not entitled to relief under state law is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Because Petitioner has failed to raise a federal constitutional issue and because the court of appeals' determination that Petitioner is not entitled to relief under state law binds this Court, Petitioner is not entitled to habeas relief on this claim.

### D. Grounds III and IV: 17-Year Delay in Bringing Charges

In ground III, Petitioner contends that the trial court erred in not granting Petitioner's motion to dismiss the charges against him based upon the 17-year period between the date of the crime and date that the prosecution brought criminal charges. (ECF No. 1, PageID.14.) He asserts this "pre-indictment or prearrest delay" violated Petitioner's right to due process. (*Id.*, PageID.15–16).

Similarly, in ground IV, Petitioner argues that the 17-year delay in bringing charges deprived Petitioner of due process (*Id.*, PageID.17.) He claims to have been prejudiced because he

"may have had an alibi witness," he could have pursued a defense of "consensual relations," and he was shot in the head three weeks after the sexual assault, leaving Petitioner without any memory of the events. (*Id.*, PageID.18). Because Petitioner makes identical federal claims in grounds III and IV, the court will address these grounds together.

As the Supreme Court has stated in no uncertain terms, "[t]here is no constitutional right to be arrested." *Hoffa v. United States,* 385 U.S. 293, 310 (1966).

> The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Id.* The Due Process Clause provides some protection against preindictment delay. *United States v. Lovasco,* 431 U.S. 783, 789 (1977); *see also United States v. Marion,* 404 U.S. 307, 324 (1971) (same). But the Supreme Court has observed that "no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." *Lovasco,* 431 U.S. at 792.

To demonstrate a due process violation due to preindictment delay, a petitioner must prove *both* substantial prejudice to petitioner's right to a fair trial *and* that the delay was intentionally imposed by the government to gain a tactical advantage. *See United States v. Brown,* 959 F.2d 63, 66 (6th Cir. 1992). Without that showing, the prosecution of a defendant following an investigative delay does not amount to a deprivation of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco,* 431 U.S. at 796.

The court of appeals applied a functionally identical standard in considering Petitioner's claims on appeal:

23

> "Before dismissal may be granted because of prearrest delay there must be actual and substantial prejudice to the defendant's right to a fair trial *and an intent by the prosecution to gain a tactical advantage.*" *People v. Patton*, 285 Mich. App. 229, 237, 775 N.W.2d 610 (2009) (quotation marks and citation omitted; emphasis added). Mere delay between the time that an offense is committed and the time of arrest does not constitute a denial of due process because there is no constitutional right to be arrested. *Id.* at 236, 775 N.W.2d 610.

(ECF No. 18-11, PageID.1043) (emphasis in original). Thus, in considering whether Petitioner had shown both prejudice and an intent by the prosecutor to gain a tactical advantage, the court of appeals determined:

> Here, we are not confronted with a situation in which the authorities had identified defendant as a potential suspect and then intentionally delayed pursuing charges against him to gain the upper hand. Rather, this case presented a situation involving a lack of due diligence by authorities in the investigation of a crime—it was an investigatory failure. There was no grand scheme pursuant to which the prosecution intended to gain a tactical advantage, and defendant had no constitutional right to be arrested. See *id.* at 237, 775 N.W.2d 610 ("Defendant has presented no evidence that the delay by the prosecution in learning his whereabouts was an attempt to gain a tactical advantage."). Accordingly, we reject defendant's due process argument. Moreover, we cannot conclude that defendant has demonstrated "actual" prejudice on the existing record, as he speaks vaguely and in terms of mere possibilities.

(*Id.*)

This determination was neither contrary to nor an unreasonable application of clearly established Federal law as determined by the Supreme Court. *See Lovasco,* 431 U.S. at 796. It was also not unreasonable given the facts as contained within the record. 28 U.S.C. § 2254(d). While Petitioner speculates as to several possibilities of prejudice due to the 17-year delay in bringing charges, clearly established Supreme Court precedent makes clear that prejudice alone is insufficient. *Lovasco,* 431 U.S. at 796. And indeed, Petitioner recognizes that the "good or bad faith on the part of the Government" is a critical inquiry for purposes of ascertaining a due process violation. (ECF No. 1, PageID.16.) Yet, Petitioner has presented no evidence that would refute the testimony as presented at trial that the rape kit sat untested for years due to unfortunate but

24

ultimately unintentional circumstances. Petitioner therefore fails to set forth any meritorious federal claim that would entitle him to habeas relief on grounds III and IV.

### E.     Ground V: Sentencing Issues

In ground V, Petitioner broadly "contends that several of his Offense Variables [were] improperly scored, with the resulting sentence being based on inaccurate information." (ECF No. 1, PageID.22.) Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings, *see Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law with respect to sentencing is not subject to federal habeas relief), a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude"); *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

Petitioner's argument regarding the scoring errors is scant. It consists principally of the statement "several of his Offense Variables [were] improperly scored, with the resulting sentence being based on inaccurate information." (ECF No. 1, PageID.22.) Petitioner provides a little more detail in his reply brief. In that document Petitioner claims that the sentencing court should not have relied on information from the victim's mother regarding psychological injury when scoring offense variable 4 because she was not certified in the field of psychology. (ECF No. 25, PageID.1311.) Petitioner also refers the Court to his pro per supplemental appeal brief. (*Id.*)

Petitioner's pro per supplemental appeal brief provides 10 pages of argument regarding the court's sentencing errors. With regard to each challenged offense variable, Petitioner reviews the facts before the court and then argues that the court erred when applying the guidelines to those facts. For example, with regard to OV 4, relating to psychological injury, Petitioner contends that the court cannot rely only on the circumstances of the crime to infer psychological injury. (*Id*., PageID.1124.) With regard to OV 7, relating to sadism, torture, and excessive brutality, Petitioner argues that the hospital record shows the victim's injuries were minimal and that the entirety of the scored conduct was simply part and parcel of the crime. (*Id*., PageID.1125–1126.) The prosecutor, on the other hand, reviewed the circumstances of the crime and argued that the crime was particularly brutal. (*Id*., PagID.1125.) Finally, with regard to OV 10, regarding exploitation of a vulnerable victim, and specifically predatory conduct, Petitioner argued that the sentencing court could not score the points without finding that the victim suffered from a readily apparent vulnerability and, according to Petitioner, no such showing was made. (*Id*., 1129–1131.)

Petitioner's reference to "inaccurate information" as the basis of his sentence is an attempt to squeeze a claim of scoring error into the narrow confines of habeas cognizability. But not once does Petitioner identify a fact before the court that was materially false. He just disagrees with the judge's application of the guidelines to the facts before him. That is entirely a state law issue, not a due process issue. The Michigan Court of Appeals concluded that the trial court did not err with respect to scoring any of the guidelines. (Mich. Ct. App. Op., ECF No. 18-11, PageID.1044 ("We conclude that the trial court did not err in assessing 10 points for OV 4. . . . With respect to OV 7 . . . we agree that the 50-point score was entirely appropriate. . . . the trial court did not err in assessing 15 points for OV 10.").) For the reasons stated above, those determinations bind this Court. *See Wainwright*, 464 U.S. at 84; *Bradshaw*, 546 U.S. at 76 (2005).

No matter how Petitioner tries to refashion his sentencing arguments they are claims about the application of state law. They are not due process claims. Accordingly, Petitioner's "inaccurate information" sentencing claim is not cognizable on habeas review.

Petitioner takes a second stab at "federalizing" his sentencing claims by claiming that counsel rendered ineffective assistance by failing to object—or failing to object sufficiently—to the court's sentencing errors. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.

This Court is bound by the state court's determination that there were no errors in the scoring of the offense variables. Objecting to the scoring, therefore, would have been futile because any objection would have been overruled as meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Therefore, Petitioner is not entitled to relief on habeas ground V.

### F. Ground VI: Ineffective Assistance of Counsel in Failing to Request Downward Departure

Lastly, Petitioner maintains that trial counsel was ineffective at sentencing in not requesting a downward departure based upon Petitioner's "diminished mental capacity." (ECF No. 1, PageID.23.) However, the record indicates that defense counsel did ask that the trial court take into account Petitioner's mental health issues during sentencing. Specifically, at sentencing counsel argued:

My client has mental health issues.

27

I certainly think that they, uh, were a factor in these offenses, and his subsequent offenses.

Of course, he was found to be competent, at this point, to stand trial.

But the reports do indicate that he does have mental health issues.

(ECF No. 18-10, PageID.1029.) And counsel did ask the court to sentence Petitioner at the very bottom of the guidelines range: 171 months. (Sentencing Tr., ECF No. 18-10, PageID.1030.)

Essentially, Petitioner asked the state court of appeals—and now asks this Court—to conclude that it was unreasonable for counsel to raise Petitioner's diminished mental health as a basis for asking the court to sentence Petitioner at the bottom of the presumptively reasonable guidelines range.[4] Instead, Petitioner argues that counsel should have raised the Petitioner's diminished mental health as a basis for asking the court to sentence **below** the bottom of the presumptively reasonable guidelines range, a step that would have required the court to provide special justification for the fact and the extent of the departure.[5] Counsel's approach was the far more reasonable choice.

Petitioner's suggestion that counsel's conduct was unreasonable because counsel did not take the additional step of asking the court to abandon the safe harbor of the guidelines range in favor of the more treacherous course of a departure sentence, is absurd. Nonetheless, the court of

---

[4] A sentence that falls "within the appropriate guidelines range . . . is presumptively proportionate and must be affirmed." *People v. Jackson*, 907 N.W.2d 865, 872 (Mich. Ct. App. 2017), *rev'd on other grounds*, 930 N.W.2d 388 (Mich. 2019).

[5] Until the Michigan Supreme Court rendered the Michigan sentencing guidelines advisory, rather than mandatory, courts were required to provide a substantial and compelling reason for the departure. *People v. Lockridge*, 870 N.W.2d 502, 518 (Mich. 2015). The *Lockridge* court eliminated that requirement in favor of a reasonableness standard; but the court also required sentencing courts to justify the sentence imposed to facilitate appellate review. *Id.* at 521. That standard has now been incorporated into the sentencing guidelines: "A court may depart from the appropriate sentence range . . . if the departure is reasonable and the court states on the record the reasons for the departure." Mich. Comp. Laws § 769.34(3).

appeals skipped right over the first *Strickland* prong. The appellate court relied on the words of the sentencing judge:

> I am aware of the documented mental health history, that you have had to deal with.
>
> But the fact remains, you perpetrated a very violent crime on a nineteen year old child. Young lady. A high school student.
>
> And when I consider all these circumstances, I'm left to the inevitable conclusion that your conduct must be dealt with, proportionately.

(Mich. Ct. App. Op., ECF No. 18-11, PageID.1045.) The sentencing judge found that proportionality in the middle of the guidelines range. With that result and the sentencing judge's stated justification, the court of appeals concluded that "even assuming deficient performance by counsel," "[b]ecause the trial court was well aware of defendant's alleged mental health issues yet punished him toward the middle of the minimum sentence guidelines range, defendant has not demonstrated the requisite prejudice . . . ." (*Id.*)

The appellate court's logic is unassailable. To prevail on his claim, Petitioner must demonstrate prejudice—that counsel's error had some effect on the result. *Strickland*, 466 U.S. at 691. How could Petitioner possibly show that counsel's reliance on Petitioner's diminished mental capacity to support a request for a minimum lower than 171 months (a downward departure) would have convinced the court, when counsel's reliance on Petitioner's diminished mental capacity to support a request for a minimum sentence of 171 months did not convince the court. As the court of appeals recognized, "given the trial court's comments, a request by counsel for a downward departure would not have made any difference in defendant's minimum sentence." (Mich. Ct. App. Op., ECF No. 18-11, PageID.1045.)

The court of appeals analysis is entirely consistent with, not contrary to or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

Although the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **CONCLUSION**

The Court will enter an order and judgment denying the petition because Petitioner has failed to raise a meritorious federal claim and denying a certificate of appealability.


Dated: February 15, 2023               /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE